1  TY VANDERFORD, SBN 130492
   THOMAS P. CHRISTOPHER, SBN 170166
2  MARIO M. MENANNO, SBN 206918
   ESCOVAR, AVILIA, CHRISTOPHER and RUIZ, LLP
3  221 East Walnut Street, Suite 106
   Pasadena, CA 91101
4  Telephone: (626) 577-7700
   Facsimile: (626) 577-7749

5  Attorneys for Plaintiff
6  BRIAN B. COCHRAN



7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10                    CV05 1953 ABC (CWx)

11 BRIAN B. COCHRAN          Case No.:

12         Plaintiff,         COMPLAINT:

13 v.                         1. MISAPPROPRIATION OF
                                 TRADE SECRET IN
14 AIRIS HOLDINGS, LLC, RONALD   VIOLATION OF CALIFORNIA
   FACTOR,DAVID KAPLAN,          CIVIL CODE §3344 and the
15 PARAGON WORLD CAPITAL; and    UTA;
   DOES 1 through 50,         2. CONSPIRACY TO DEFRAUD;
16 Inclusive,                 3. BREACH OF FIDUCIARY
                                 DUTY;
17         Defendants.        4. INTENTIONAL INTERFERENCE
                                 WITH PROSPECTIVE
18                               ECONOMIC ADVANTAGE;
                              5. INTENTIONAL INTERFERENCE
19                               WITH CONTRACT;
                              6. INTENTIONAL
20                               MISREPRESENTATION;
                              7. MISAPPROPRIATION OF
21                               COMMMON LAW RIGHT OF
                                 PUBLICITY;
22                            8. FALSE DESIGNATION OR
                                 REPRESENTATION (LANHAM
23                               ACT);
                              9. UNFAIR COMPETITION AND
24                               UNFAIR BUSINESS
                                 PRACTICES;
25                            10. UNJUST ENRICHMENT
                              11. ACCOUNTING;



1

DOCKETED ON CM

MAR 2 4 2005

BY          019



03/17/2005 4:16:02 PM  Receipt #: 21864
        Cashier : ENAKADA [LA 2-1]
Paid by: ESCOVAR, AVILA
2:CV05-01953
2005-086900        5 - Filing Fee Civil(1)
Amount :                        $60.00
2:CV05-01953
2005-510000        11 - Special Fund F/F(1)
Amount :                       $190.00
Check Payment : 11059 /        250.00
Total Payment :                250.00

**12. CONSTRUCTIVE TRUST AND**
**13. REMOVAL OF FACTOR AS**
**DIRECTOR FOR**
**MISAPPROPRIATION OF**
**AIRIS**
**14. Temporary Restraining**
**Order, Preliminary and**
**Permanent Injunction**

**SHAREHOLDER DERIVATIVE**
**ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiff, Brian B. Cochran hereby alleges as follows as a derivative shareholder of Airis. Plaintiff Brian B. Cochran did not seek the permission of the Airis Board of Directors to file this action as doing so would have been futile for the reasons stated herein. However, plaintiff did deliver a copy of the proposed complaint plaintiff was filing on behalf of Airis on March 17, 2005.  No other similar action has been or is likely to be, instituted by the parties herein.

### I. THE PARTIES

1.  Plaintiff Brian B. Cochran ("Plaintiff") is Chief Executive Officer, a member, and fifty percent owner of the shares of Airis.  His principal place of

2

business is in Los Angeles, California.  Plaintiff
asserts the allegations herein individually and
derivatively on behalf of Airis.

### A. DEFENDANTS

2.   Defendant Airis Holdings, LLC ("Airis") is
a Delaware Corporation with its principal place of
business in Los Angeles, California. Airis, at all
times relevant hereto was a company created for the
purpose of development, design, construction, finance,
and management of air cargo, airport, and aviation
facilities. Airis is being named herein as a nominal
defendant since Plaintiff is bringing this action on
behalf of Airis as a shareholder derivative action.

3.   Plaintiff alleges on information and belief
that Defendant Ronald  Factor ("RFactor") is and at
all times relevant hereto was, an individual acting as
a competitor of Airis. RFactor is the current President
and Chief Operating Officer of Airis and a 50%
shareholder of Airis. RFactor resides in Houston, Texas
and his principal place of business is Houston, Texas.

4.   Plaintiff alleges on information and belief that Defendant David Kaplan ("Kaplan") is and at all times relevant hereto was an individual acting as a competitor of Airis who resides in Atlanta, Georgia. Plaintiff further alleges on information and belief that Kaplan is a principal in the entity known as Paragon World Capital, LLC ("Paragon"). Plaintiff further alleges on information and belief that Kaplan has been represented as the managing principal of an Airis competitor known as SPF-Group which has been represented along with Paragon as being part of the Mallory & Evans family of companies, which are also competitors of Airis.

5.   Plaintiff alleges on information and belief that Paragon at all times mentioned herein is a company with its principal place of business in Scottsdale, Georgia.

6.   Plaintiff alleges on information and belief that Defendant Justin Factor ("JFactor") is and all times relevant hereto was an individual acting as a competitor of Airis and even though an employee has

4

acted to the detriment of Airis by divulging trade secrets and confidential information to the competitors of Airis.  Plaintiff alleges on information and belief that JFactor resides in Houston, Texas.

7.   Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, and therefore sue said Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same have ascertained.  Plaintiff alleges on information and belief that each of the fictitiously named Doe defendants is responsible in some manner, and are jointly and severally liable, for the acts, omissions and circumstances herein alleged and that Plaintiff's damages were proximately caused by their conduct.  For convenience, each reference to a named defendant herein shall also refer to the Doe defendants, and each of them.

8.   Plaintiff alleges on information and belief that at all material times defendants with the

exception of Airis, and each of them, were the agents, employees, partners, joint venturers, co-conspirators, owners, principals, and/or employers of the remaining defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture.  Plaintiff alleges on information and belief that with the exception of defendant Airis, the acts and conduct described herein were known to, and authorized, directed, and/or ratified by, the defendant individuals and the officers, directors, and managing agents of Paragon or business entities, and each of them and Does 1-50.

9.    Defendants RFactor, JFactor,  Kaplan, Paragon and Doe defendants shall be referred to collectively herein as "Defendants."

## II. JURISDICTION AND VENUE

10. Personal jurisdiction exists over defendants, and each of them, pursuant to California's "long-arm"

6

statute, Code of Civil Procedure section 410.10, and Rule 4(k) of the Federal Rules of Civil Procedure. At all times relevant hereto, defendants have continuously and systematically established and maintained contacts with the State of California.

11. Plaintiff alleges on information and belief that RFactor, Kaplan, Paragon and JFactor are and at all material times have been conspiring with one another to wrongfully take from Airis, certain Airis corporate opportunities, Airis' name, Airis' projects, Airis' goodwill and Airis contracts with third parties. Among other things, Plaintiff alleges on information and belief that defendants have systematically conducted these wrongful acts and conducted business in California, including in Los Angeles County. In addition, Plaintiff and Airis have been damaged in the State of California as a direct and proximate result of defendants' wrongful acts as alleged herein. Plaintiff also alleges on information and belief that defendants have derived revenues and profits in California from their wrongful and deceptive conduct.

12.  Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.§§1331, 1332, and 1338.  Federal question jurisdiction exists, because this case "arises under" federal law, as that term is used in 28 U.S.C. §1331.  Diversity jurisdiction exists over the action under 28 U.S.C. §1332 because the amount in controversy exceeds the sum or value of $75,000 and the action is between citizens of different States.  Finally, pursuant to 28 U.S.C. §1367 and California Civil Code §3426.2, Plaintiff seek injunctive relief and damages against defendants under principles of pendent jurisdiction over any claims arising under California law, in that such claims flow from a common nucleus of operative facts.

13.    Venue lies within this court pursuant to 28 U.S.C. §§ 1391 (a)(2) and (c); Plaintiff alleges on information and belief that a substantial part of the events and omissions giving rise to this action occurred in the Central District of California and/or Plaintiffs have been damaged in the State of California as a direct and proximate result of Defendants'

8

wrongful acts as alleged herein.

### III. Background of Airis Holdings, LLC.

For the past twenty (20) years, RFactor and Plaintiff were involved in the development, design, construction, finance, and management of air cargo, airport, and aviation related facilities.  RFactor and Plaintiff are previous principals in a company known as AVIA Development Group ("Avia"), established in the early 1980's.  Avia was dissolved in 1994.

14.  In 1994, RFactor and Plaintiff formed Airis Development Groups, Inc. (A Texas Corporation) to pursue the aviation development business. In that same year, RFactor and Plaintiff began to pursue the development of an air cargo facility at Newark, (New Jersey) International Airport. RFactor and Plaintiff brought in John Dixon ("Dixon") and Dave Garrett ("Garrett") to facilitate the development of that project.

15.  Prior to the Newark project, Dixon and Garrett's experience with the aviation facilities

development business was primarily limited to construction work, through their construction company Sunbelt International, including work performed in the past for AVIA Development.

16.   RFactor, Plaintiff, Dixon, and Garrett later created Airis EWR, LLC in order to pursue the Newark project and others like it, then later formed the Airis Development Group, Inc. ("Airis Corp."). Airis Corp. was created as a service company that would identify project to be place in single purpose entities.   The Successor of Airis Corp., Airis Holdings, LLC has since grown to become the nation's largest privately held aviation development company, with one time offices in Atlanta, Houston, Los Angeles, London, Montréal, New York and Stockholm.

17. In 1996, Airis Corp. was awarded the Newark project. Plaintiff, RFactor, Dixon, and Garrett created Airis Newark, LLC a Delaware limited liability company to act as the entity controlling, developing, and managing their interest in the Newark project.   Each of the Principals was a member of Airis Newark and an

equal shareholder of the company after the interest
owned by an outside participant. General Electric
Capital Corporation, has an outside cash flow
participation of 45% in the Newark project.

18. When the Newark project was successfully
completed, the Principals pursued and developed a
number of additional aviation projects through Airis
Corp. and created limited liability companies for each
of these projects as they had done with Newark.  These
companies were known as:  Airis Cincinnati, LLC, Airis
Louisville, LLC, Airis Miami, LLC, Airis MIAMI II, LLC,
and Airis NEWARK, LLC (the "Airis Project LLC's"),
Airis Hartsfield, LLC, Airis JFK, LLC, Nordic Airport
Properties, A.B. Airis LAXI, LLC, Airis Heathrow, LLC
(CSC Heathrow), Airis Europe, Ltd., and Airis
Worcester, LLC (the "Airis Project LLC's")

19. In 2000 and 2001, Airis Corp. and the
Principals were attempting to finalize arrangements for
the development of an air cargo facility at JFK
International Airport.  In the course of structuring
the transaction, the lenders who were to provide

11

financing for the JFK project required that the project be cross-collateralized by the Principals' interests in the other Airis Project LLC's.

20.   Garrett and Dixon represented to RFactor and Plaintiff that in order to satisfy the lender's requirement, a holding company must be created with an operating agreement. Garrett is an attorney and a former partner of a well known firm in Atlanta, Georgia. Garrett also from time to time advised the Airis entities as to what should be done in the best interest of the Airis entities. Garrett and Dixon urged and advised Rfactor and Plaintiff to: (1) create a holding company; and (2) create an operating agreement. Garrett claimed that this was the only way to meet the lender's requirements and build JFK. Garrett represented that the holding company was vitally necessary to maintain all of the shares and interests in the Airis Projects LLC's, to carry out the cross-collateralization required to obtain the financing for the JFK project and to provide additional flexibility for financing future projects.

21. Unbeknownst to Plaintiff, the representation by Garrett that a holding company and operating agreement was required, was false and fraudulent.  However, Plaintiff relied to his detriment on such representation and agreed to form a holding company and sign an operating agreement. Garrett and Dixon failed to disclose the true purpose of setting up a holding company and requiring an operating agreement to be signed by Garrett, Dixon, RFactor and Plaintiff.  The true purpose behind the misrepresentation was Garrett and Dixon's desire to acquire Airis, and/or usurp Airis Corporate Opportunities, Airis trade secrets, Airis resources, Airis confidential information. Garrett advised Plaintiff to sign the Operating Agreement governing Airis Holdings, LLC without disclosing his true personal interests and true intent. The operating agreement was signed without disclosure by the four members, in or about February, 2002 (hereinafter referred to as "The Dixon Garrett Operating Agreement.") Had Plaintiff known the true intent behind the Dixon Garrett Operating Agreement, namely Dixon and

13

Garrett's plan to take and misappropriate Airis work product, Airis trade secrets, Airis confidential information and known or was advised that there were other ways to cross-collateralize the subject projects with the JFK project, Plaintiff would never have signed the Dixon Garrett Operating Agreement. Plaintiff was never advised to seek outside counsel before signing this agreement and relied on Garrett, his representations and relied on the fact that when Garrett advised Plaintiff to sign the Operating Agreement that Garrett had a fiduciary duty to Plaintiff as a Member of the Airis LLC's.

### A. The Buy/Sell Offer of Garrett and Dixon

22. On March 7, 2002, Garrett and Dixon submitted to Plaintiff and Factor a buy-sell offer under § 15.1 of the Airis Holding LLC Agreement in which Garrett and Dixon would either buy or sell Airis and all related entities for the amount of $20 million. (The Garrett Dixon Buy/Sell Offer) The Buy Sell Offer under § 15.1 of the agreement required Factor and Plaintiff to

14

respond with an acceptance to buy or sell on June 4, 2002

23.   Garrett, Dixon, RFactor and Plaintiff executed the Buy Out Agreement on or about October 1, 2002, whereby Plaintiff and Rfactor bought out Garrett and Dixon.  After the Buy Out of Dixon and Garrett, RFactor and Plaintiff did not draft and execute an agreement to govern how Airis would operate. In addition, after the buy out in October, 2002, RFactor and Plaintiff never followed the terms and conditions of the Dixon Garrett Operating Agreement.

**B. <u>RFactor and Plaintiff Never Followed the Dixon Garrett Operating Agreement and Never Executed A New Operating Agreement</u>**

24. During and after the buy-out agreement, Campbell & Riggs became corporate counsel for Airis. After the buy-out of Dixon and Garrett, RFactor and Plaintiff became 50%-50% owners of Airis Holdings, LLC, ("Airis").  Corporate counsel advised both Plaintiff and RFactor that the Dixon Garrett Operating Agreement was not in force because it only applied to the four

members before the buy out. It was decided without any type of Board of Director approval that RFactor would take the title of president and Chief Operating Officer of Airis Holdings, LLC and Plaintiff would take the title, Chief Executive Officer and Treasurer.

25. The titles were not confirmed under Section 8.8 of the Operating Agreement. No Board of Directors meeting was held to decide whether an operating agreement was required or should be drafted. No shares were issued to either member. RFactor and Plaintiff never followed any of the requirements of the Dixon Garrett Operating Agreement. Another example, but not by limitation, is Section 15.1(a) of the Dixon Garrett Operating Agreement, which requires that on or before April 30, of each year the Board of Directors shall meet and determine the "Minimum Offer Price per Capital Share" and the "Minimum offer Price per Profits Share." After the buy-out of Dixon and Garrett in October, 2002, RFactor and Plaintiff never met on or before April 30 of each year to determine these prices.

26.   The Board of Directors have never met to approve of any of the titles taken by RFactor or Plaintiff. Section 8.8 of the Dixon Garrett Operating Agreement requires that officers be appointed by the Board of Directors. No formal officer positions or director positions, such as the Chairman of the Board were appointed or approved of by the Board of Directors under 8.8 of the Dixon Garrett Operating Agreement. No Annual Meeting has taken place under 8.4(a) of the Dixon Garrett Operating Agreement. RFactor and Plaintiff have never designated the amount of shares each shall have.  Section 4.1(a) of the Dixon Garrett Operating Agreement sets forth how shares are designated. Moreover, RFactor and Plaintiff have never amended the list of projects set forth in the Dixon Garrett Operating Agreement, since 2002, when Dixon and Garrett were Members of Airis.  However, for the past two years Plaintiff and RFactor never acted pursuant to, or intended to follow, the Dixon Garrett Operating Agreement, once Dixon and Garrett were bought out in October 2002.  RFactor and Plaintiff were never bound

17

by the Dixon Garrett Operating Agreement after the buy

out of Dixon and Garrett in October 2002.

27.   In addition, the actions of RFactor and

Plaintiff since October 2002 have shown that the Dixon

Garrett Operating Agreement was unenforceable and not

in effect, since Plaintiff and RFactor have not

followed any of the provisions of said agreement since

the buy out of Dixon and Garrett.

**IV.**      **Usurpation of Corporate Opportunities, Self**
        **Dealing, Mismanagement, Misrepresentations,**
        **Conspiracy to Defraud Airis and Manipulation**

28.  Plaintiff only recently discovered that RFactor

has breached his duty of loyalty to the Company and his

fiduciary duties to Plaintiff and Airis by using his

position as an officer and director of Airis to engage

in self-dealing, conspiracy and misrepresentations with

other Defendants, disclosing Airis trade secrets,

wrongfully usurping Airis Corporate Opportunities,

wrongfully pledging Airis, Airis contracts,

manipulating cash flow projections, using Airis' name,

reputation, Airis projects, all for his own benefit and

the benefit of Defendants and Does 1-50. Rfactor

engaged in self-dealing and the conduct set forth

herein with one or more individuals and/or entities

including Defendants and Does 1-50, for the purpose of

expecting and/or receiving a financial gain, all to the

detriment of Airis. In addition, RFactor and Defendants

have wrongfully misappropriated the Airis name, Airis'

projects, Airis' contracts with third parties, Airis

good will, Airis trade secrets and the work product of

Airis for the personal benefit of RFactor and Does 1-

50, all at the expense and detriment of Airis. RFactor,

Defendants and Does 1-50 have also attempted to usurp

Airis corporate opportunities for their individual

benefit and the benefit of defendants and at the

expense and detriment of Airis and Plaintiff.

29.   This action also arises out of Defendants'

misappropriation of Airis' right of publicity of its

name and work product without the authorization and

approval of Airis and Plaintiff.  Defendants and Does

1-50, have acted for their own pecuniary gain and

profit and at the expense of Airis.  Plaintiff alleges

on information and belief that defendants and Does 1-50 used Airis' name and likeness, Airis projects, Airis personnel, Airis resources and Airis trade secrets and confidential information in a concealed and calculated effort to usurp Airis Corporate Opportunities, and push Plaintiff out of Airis through manipulation, misrepresentation to Plaintiff and third parties with the intent of obtaining a financial benefit and pecuniary gain for Defendants and Does 1-50. Defendants and Does 1-50 represented that they were acting as "Airis," when in fact Defendants and Does 1-50 were acting for their own individual pecuniary interest and gain, all at the detriment of Airis and Plaintiff.

30.   Defendants and Does 1-50 concealed from Airis and Plaintiff their misappropriation of the Airis name, reputation, trade secrets, Airis confidential information, Airis resources, Airis contracts with third parties and Airis present and future projects. This was done all at the detriment of Airis and its

shareholders and without the consent of Airis and Plaintiff.

31. Airis' highly valued name and work product has been developed over the past 10 years. RFactor, defendants and Does 1-50 have damaged Airis' reputation and standing in the Aviation and Development industry and have damaged Airis' goodwill, by such misappropriations, manipulations and misrepresentations. Defendants' conduct has all been to the detriment of Airis and its shareholders.

32. Airis never authorized, agreed or consented to Defendants' and Does 1-50 wrongful use and taking of Airis' name, Airis resources, Airis personnel, Airis projects and Airis trade secrets, including contacts developed over the past ten years.  Rather, Plaintiff alleges on information and belief that Defendants and Does 1-50, knowingly, fraudulently and without authorization, misrepresented and misappropriated Airis' name and likeness, projects, contracts with third parties, trade secrets, Airis resources, Airis personnel, the value of  Airis' projects in a

21

calculated effort to usurp Airis Corporate Opportunties

for Defendants' and Does 1-50 own pecuniary benefit.

RFactor, Defendants and Does 1-50 also concealed their

actions from Plaintiff, Airis employees and Airis

Corporate attorneys.

33. Airis, unlike any other aviation developer has

designed, constructed and completed the airport

projects at major HUB airports in the United States.

Therefore the Airis name and reputation is a valuable

asset of Airis. Defendants are wrongfully

misappropriating the Airis name, Airis reputation and

Airis success in developing major airport projects for

defendants' individual pecuniary benefit and at the

detriment of Airis.

A.      **RFACTOR'S WRONGFUL ACCEPTANCE OF**

        **FUNDS FROM A COMPETITOR ON THE SFO PROJECT**

34. In or about March of 2003, unbeknownst to

Plaintiff, RFactor and Airis, Dixon and Garrett, before

the buy out of Dixon and Garrett, formed a competing

company with Airis called Mallory & Evans Development

("MED"). MED directly competed with Airis on a project

in San Francisco to build a multi-tenant air cargo facility for the City and County of San Francisco (hereinafter referred to the "SFO" project). Airis spent a total of more than $1 million in pursuing such project and at first was awarded the SFO.

35. On or about October, 2003, unbeknownst to Airis and Plaintiff, RFactor accepted a $3 million loan from Dixon, who clearly was competing with Airis on the Airis SFO project. When Plaintiff and Airis discovered this impropriety, Plaintiff ordered that the funds be immediately returned. Airis and Plaintiff only recently discovered that RFactor's manipulations, misrepresentations, wrongful usurpation of Airis Corporate opportunities were just beginning.

36. MED is part of the "Mallory & Evans Family of Companies." Dixon is one of the principals. The "Family" consists of the following Companies: Maxon Holdings, SPF-Group, Paragon World Capital, LLC ("Paragon").

37. Recently, MED, Mallory & Evans, Paragon and SPF-Group have published promotional materials

23

representing that David Kaplan is a principal and "managing director of SPF Group."  In addition, Kaplan has represented himself to be the sole proprietor of Paragon.

38.   The promotional materials published by the above companies have wrongfully represented that such companies, designed, developed, and originated the Airis projects at JFK International, Newark Liberty, Miami International, Cincinnati/Northern Kentucky and Louisville International Airports.  Such wrongful misrepresentations and misappropriations of Airis work have caused harm and damage to Airis' name, reputation, good .

### B.   AIRIS' CORPORATE CONTRACTS
### AND OPPORTUNITIES

39.   Over the past several years, Airis personnel, Airis corporate counsel and Airis Members have been expending time, effort and monies to develop projects such as Airis Sweden AB and NAP Joint Venture, Airis Cincinnati LLC. Also, Airis has designated the following projects as Corporate

Opportunities and has spent monies, time and effort to develop the following Airis opportunities: (1) Star Alliance, including projects at LAX, MIA, and MDA; (2) GECAS and (3) MIA/Cielos. These projects comprise either signed Airis' corporate contracts with third parties and/or  Airis corporate opportunities.

### AIRIS CONTRACTS WITH THIRD PARTIES

#### (1) DHL at Cincinnati Airport

40. Airis is currently managing the forward float Process for DHL for the term of the lease. The lease terms is 25 years. Airis receives approximately $100,000 per year to manage the interest bearing accounts for DHL at Cincinnati Airport.

#### (2) Nordic Airport Properties

41. Airis has a joint venture with the Swedish government to develop on airport aviation related facilities. The term of the contract 25 years. RFactor has a fiduciary relationship with Airis which prohibits RFactor from acquiring such corporate contracts and/or opportunities. Airis either has an equity interest in these projects and/or a tangible expectancy. Such

25

projects are essential for the viability of Airis. Each of the above projects are within the line of business of Airis. Moreover each Airis project is incident to Airis' present and prospective business of Airis and the projects are ones in which Airis has the capacity to engage.

## AIRIS CORPORATE OPPORTUNITES
### (1) Star Alliance

42. Airis has spent time, effort and at least $100,000 in costs to pursue projects with the Star Alliance. The projects consist of developing and constructing lounges, equipment financing and development of terminals throughout the world and re-designing and constructing the Tom Bradley International Terminal at LAX. There are 16 carriers that are part of the Star Alliance, such as Lufthansa, Scandinavia Airlines, Singapore Airlines, United Airlines, US Airways, Thai, Varig, Air New Zealand, ANA, Air Canada, Asiana Airlines, Austrian Airlines, bmi, Lot (Poland) Airlines, and Span Air.

### (2) CIELOS

43.   Airis is developing a 300,000 square foot building and adjacent aircraft parking for CIELOS Airlines. Al Shively an Airis employee, in conjunction with Plaintiff first contacted CIELOS about its potential need for a new air cargo building.  Airis has expended approximately $25,000 developing this opportunity.

### (3) GECAS

44.   In August, 2003, Plaintiff of Airis was contacted by Mehrdad Noorani, the managing director of General Electric Capital Aviation Services ("GECAS"). GECAS wanted to meet with Plaintiff to find out more about Airis.  GECAS knew of Airis through the project built by Airis at Newark in which GE Capital participated, on a 45% basis. The Newark project was completed in 1996.  Several meetings thereafter took place between GECAS and Airis in which RFactor and Plaintiff attended, as well as Airis' Corporate Counsel, Winn Campbell. The meetings took place to discuss how GECAS and Airis could go forward together to develop new projects as a joint venture. At one of

the meetings Airis proposed that GECAS and Airis

together develop and acquire 16,070,575 square feet

throughout 40 global gateway airports at an estimated

value of $3,437,571,223.   To date, Airis has spent

approximately $25,000 in costs and thousands of hours

in pursuing the GECAS opportunity.

### C.   RFACTOR'S WRONGFUL USURPATION OF AIRIS OPPORTUNITIES

45.   Unbeknownst to Airis and Plaintiff, defendant

RFactor began conspiring with Kaplan, Paragon, JFactor

and Does 1-50 to force Plaintiff out of Airis and to

take Airis' name, current projects, current contracts

and future projects, all to the detriment of Airis and

its shareholders and for the personal benefit of

Defendants' and Does 1-50.   RFactor, defendants and

Does 1-50 had a secret plan and agenda which was

concealed from Airis and Plaintiff wherein RFactor

conspired with defendants to carefully orchestrate

meetings with Airis Corporate Counsel and Plaintiff and

other Airis personnel with a hidden agenda, unbeknownst

to the meeting participants, but only known to RFactor,

Defendants and Does 1-50. The meetings were set up by

RFactor, unbeknownst to Airis and its shareholders, for the purpose and intent of RFactor taking, for his own individual benefit and the benefit of defendants and Does 1-50, current Airis Corporate Opportunities and current contracts Airis has with third parties. RFactor's *modus operendi*  and conspiracy in dealing with Airis and Plaintiff and Airis' Corporate counsel, was to insist upon unreasonable demands of Airis that were imprudent proposed business decisions. The RFactor demands were not cost effective and would eventually drive Airis into financial ruin. RFactor, during these meetings, insisted that Plaintiff agree to fund projects and set budgets that were completely inflated and not reflective of the true cost of the project considering the nature and knowledge of the proposed project. RFactor also unreasonably insisted that Kaplan and Olsson, competitors of Airis, become Airis Members for each Airis opportunity. All of these demands were not in the best interest of Airis and RFactor knew such decisions were unreasonable. Nevertheless, RFactor demanded that unless Plaintiff agreed to such

unreasonable proposals, the Airis Corporate

Opportunities would become RFactor's individual

opportunities. RFactor continued proposing

unreasonable, imprudent business decisions for each

Airis corporate opportunity, which even Airis Corporate

counsel advised were not in the best interest of Airis.

Moreover, RFactor would intentionally hide information

about the current Airis projects and contractors so

that Airis and Plaintiff could not evaluate information

to come to a conclusion as to whether a proposed budget

for project was a prudent business decision for Airis.

RFactor intentionally hid this information and at the

same time demanded that if RFactor's proposed budget

was not agreed upon by Plaintiff, then the project

became RFactor's individual project.  RFactor failed to

provide any independent support and detail for the

proposed budgets, making it impossible for Airis and

Plaintiff to evaluate. This was done as a calculated

effort to wrongfully claim such projects as RFactor's

individual opportunity. RFactor improperly used Airis

resources, contacts, trade secrets, the Airis name, and

30

assets all for his personal benefit and all to the detriment of Airis.

### (1) RFactor's Wrongful Usurpation of CIELOS

46.   Airis personnel spent time, effort and monies have been incurred to develop a project which has become known as the CIELOS project.   However, in an effort to take the CIELOS project for his own, and defendants, RFactor demanded that Airis Members contribute $500,000 for work on CIELOS project at Miami International Airport when Airis and CIELOS did not have an agreement that CIELOS would sublease any building from Airis.   CIELOS is currently leasing space at Miami International Airport, in buildings owned by the the County of Miami Airport. The remaining term of their lease obligation is another three years.   CIELOS would not agree to sign a sublease with Airis until Airis proved that the new proposed building would be price competitive with their current lease.   The site of the proposed new building that CIELOS would allegedly lease has extensive environmental issues and existing tenants (including a fuel farm) that would

need to be re-located. Spending $500,000 for such an uncertain project with environmental hazards would not be a prudent business decision for Airis. Cielos tenancy is questionable at this time, thus RFactor's demand for $500,000 was not a prudent and reasonable business decision for Airis. RFactor made such an unreasonable demand to trigger a refusal response from Plaintiff to proceed with the the exorbitant $500,000 budget. RFactor's conduct was intentional so as to claim a right to take the Airis Corporate opportunity for himself and defendants, including DOES 1-50.

**(2) RFactor's Wrongful Usurpation of Swissport**

47. RFactor further made an unreasonable demand that Airis and Plaintiff hire Brad Buckshorn, LLC, an Atlanta based company as a construction manager for a project located in Brussels, Belgium, known as the "Swissport project." Plaintiff pointed out that it would not be cost effective to have a construction manager from Atlanta, Georgia oversee a project in Belgium. RFactor wrongfuly demanded by ultimatum that unless the budget and personnel proposed was accepted

32

by Plaintiff, the project becomes RFactor's business

opportunity.   When Plaintiff stated that hiring Brad

Buckshorn, LLC for the Swissport project was not

reasonable, cost effective, nor a prudent business

decision in the best interest of Airis, RFactor,

ignored such factors and wrongfully claimed that he had

a right to take the Swissport project for himself,

individually.

### (3) RFactor's Wrongful Usurpation of Star Alliance

48.   Since December, 2003, Airis through

Plaintiff, Airis personnel and Airis Corporate Counsel

have been spending time, effort and monies pursuing

various projects for Star Alliance at Los Angeles World

Airports ("LAX"), NGO in Japan and at Miami

International Airport.   The Star Alliance LAX project

would entail financing and construction of various

improvements within the Tom Bradley International

Terminal.   Plaintiff has attended numerous meetings at

LAX and Frankfurt, Germany, spending a great deal of

time and effort on the proposed project. As much as

$100,000 has been expended in costs and countless

hours.   Plaintiff proposed hiring a Los Angeles based construction manager with recent experience on an adjoining $300 million American Airlines Terminal. RFactor objected to such this proposal and demanded that Holmes McGeory, a New York based individual, without hands on construction expertise, manage the proposed LAX projects. Such a demand is not reasonable, prudent, cost effective, or in the best interest of Airis. Also, RFactor demanded that $1 million should be budgeted immediately for this project, even though no contract has been signed to date.   RFactor claimed that since Plaintiff was not agreeing to his demands, RFactor wrongfully claimed that he is entitled to pursue all the Star Alliance projects at the detriment of Airis. These are just examples of the wrongful conduct of RFactor and defendants.

49.   Defendant RFactor made other unreasonable demands, such as allowing additional individuals to become Airis Members, including defendant David Kaplan and Roland Olsson.   When this issue was first considered by Airis and its Corporate Counsel, a block

vote of the current Airis Members was recommended and advised by Corporate Counsel to protect Airis.  Kaplan and Olsson were advised that to be even considered a member of Airis, each would also be required to contribute an equity interest on a proportionate basis. RFactor demanded and insisted that Kaplan and Olsson be allowed to become Members of Airis and participate in any proposed Airis project, such as Star Alliance/LAX and NGO, Star Alliance MIA, Star Alliance MDA, Swissport and GE Capital. Also, that Kaplan participate as an Airis Member in MIA/CIELOS.  RFactor further rejected the block vote concept recommended by Airis' Corporate Counsel and any requirement that Kaplan and Olsson contribute equity for the subject Airis projects.

50.  As soon as Plaintiff expressed any hesitancy and/or resistance to the above demands, RFactor wrongly and without any authority, claimed that such projects are now exclusively RFactor's individual business opportunity.

**DEFENDANTS' WRONGFUL USURPATION OF GECAS VENTURE,**

**TAKING OF THE NAP CONTRACT AND AIRIS AND OFFERING**

**IT INTO GECAS IN A JOINT VENTURE**

51.  The most egregious actions of RFactor,
Defendants and Does 1-50, to date, occurred with the
GECAS Airis Corporate Opportuntiy.  Plaintiffs Airis
and Plaintiff recently discovered that since late
January, 2005 until now, RFactor, JFactor, Kaplan,
Paragon and Does 1-50, have been secretly negotiating
with GECAS to create a joint venture without the
knowledge and authorization of Airis and Plaintiff.
Defendants have intentionally concealed meetings,
communications and negotiations from Airis and
Plaintiff, wrongfully used the name of Airis and Airis
reputation, past projects and wrongfully pledged Airis
itself, all for the personal pecuniary benefit of
defendants, Does 1-50 and to the detriment of Airis, as
described herein.  GECAS has been a design corporate
opportunity of Airis since 2003.

52.  In August, 2003, Plaintiff was contacted by

Mehrdad Noorani, the managing director of General

Electric Capital Aviation Services ("GECAS").  GECAS

wanted to meet with Plaintiff to find out more about

Airis.  GECAS knew of Airis through the project built

by Airis at Newark in which GE Capital participated, on

a 45% basis. The Newark project was completed in 1996.

Several meetings thereafter took place between GECAS

and Airis in which RFactor and Plaintiff attended. On

January 28, 2005,  GECAS and Airis attended a meeting.

Airis' Corporate counsel, Winn Campbell attended such

meeting representing Airis.  The meetings took place to

discuss how GECAS and Airis could go forward together

to develop new projects as a joint venture. Internal

meetings among Airis personnel, the Airis members and

Airis attorneys also took place discussing the status

of various Airis present and future projects from

December 28, 2004 to February 10, 2005.

        53.   Plaintiff, during such meetings expressed

his continued desire to proceed with GECAS and  other

Airis projects but wanted to have an opportunity to

evaluate the details of the Airis projects and the best

way to approach each Airis project, including GECAS, in a reasonable and prudent manner, that would be in the best interest of Airis.  Plaintiff expressed this to Airis attorneys, Airis personnel, and third parties for whom Airis was potentially developing such projects.

54.   RFactor, Defendants and Does 1-50 are wrongly attempting to usurp these Airis projects including any projects done jointly with GECAS and Airis. On or about February 24, 2005, RFactor wrongly and without the authorization and knowledge of Airis and Plaintiff offered GECAS as part of the joint venture the following Airis assets: (1) Airis' interest in Nordic Airport Properties ("NAP"), a joint venture between the Swedish government and Airis; (2) Cash and (3) The Airis organization itself.  In addition, RFactor represented that Plaintiff was not going to participate in the GECAS Airis Corporate Opportunity and that "others," would take his place.  Present at the February 24, 2005 meeting were defendants RFactor, JFactor, David Kaplan and Roland Olsson.

55.   Plaintiff contacted GECAS and stated that Plaintiff is a 50% owner in Airis and would participate in any potential joint venture with Airis.  Plaintiff also stated that Airis looked forward to working with GECAS on the joint opportunity. When RFactor found out that Plaintiff confirmed with GECAS that Plaintiff was a 50% owner of Airis and would participate in any joint venture with GECAS, RFfactor wrote a letter to Plaintiff and his attorney wrongly claiming that Plaintiff, an officer and director of Airis could not communicate with GECAS.  The letter further wrongly claims that the GECAS Airis Corporate Opportunity is an individual opportunity of RFactor.

56.   RFactor's wrongful actions along with the actions of defendants and DOES 1-50 demonstrates the egregious nature of defendants' wrongdoing that must be immediately enjoined from:

- Usurping any and all Airis Corporate Opportunities, including Star Alliance projects, GECAS, CIELOS, and Swissport

39

- Taking the Airis organization and pledging it to a joint venture with GECAS without the authority of Airis' Board of Directors

- Pledging and offering the Airis NAP contract to GECAS in a third party joint venture without the authority of Airis' Board of Directors

- Pledging and offering cash to any GECAS joint venture without authority of the Airis Board of Directors

- Disclosing Airis Trade Secret and confidential Information to Defendants

- Using Airis name, likeness, reputation, resources, work product, projects for defendants' own individual pecuniary interest or expected pecuniary interest to the detriment of Airis.

- Demanding that Airis competitors be members of Airis, such as, Kaplan and Olsson.

## WRONGFUL DISCLOSURE OF TRADE SECRETS TO

## KAPLAN, A COMPETITOR OF AIRIS

57.   As previously described herein, Kaplan has acted as a competitor with Airis, along with Paragon on past projects. In addition, Kaplan has conspired with RFactor, received Airis trade secret information from RFactor and has used such information to the detriment of Airis by usurping Airis' Corporate Opportunities, interfering with contractual relationships with Airis and interfering with Airis' prospective economic advantage.   Kaplan has interfered with Airis' ability to go forward with the Star Alliance projects, the Swissport project, the GECAS opportunity and NAP. Kaplan has used Airis confidential and trade secret information that could jeopardize current contracts Airis has with third parties.   In addition, marketing materials have been used by Airis' competitors showing that Kaplan is the "managing director of SPF-Group," a clear competitor of Airis. Paragon is also listed in the Mallory & Evans website and is shown to be part of the "Mallory & Evans Family of Companies."   MED, also part of the Mallory & Evans Family of Companies, competed with Airis on the SFP project.   Such marketing

materials misrepresented that SPF, Paragon and MED designed, developed and built Airis projects. Such conduct was concealed from Airis and plaintiff. Kaplan had falsely and fraudulently represented to Airis and plaintiff that he was working as a consultant for the benefit of Airis. Kaplan and Paragon however, were concealing the fact that Defendants were working for the benefit of RFactor individually in his effort to usurp the Airis corporate opportunities. Kaplan and Paragon along with RFactor and JFactor wrongly misappropriated Airis resources, Airis trade secrets, Airis confidential information, Airis projects, Airis work product, and Airis contracts, all for the benefit of RFactor and to the detriment of Airis and plaintiff. Had Airis and plaintiff known that Kaplan, since the SFO project has been working as an Airis competitor, Airis would not have allowed Kaplan and Paragon to do business with Airis.

58.   RFactor has conspired with Kaplan by allowing Kaplan to wrongfully use an Airis e-mail address. RFactor continues to send Kaplan trade secret

information regarding Airis projects, including the
GECAS and Star Alliance projects. Airis and Plaintiff
specifically demanded that RFactor not send Kaplan
trade secret information regarding the GECAS and Star
Alliance projects. RFactor has blatantly ignored this
demand. Therefore the conduct of RFactor and Kaplan
must be enjoined to prevent further damage to Airis.

- Disclosing any and all trade secret
  information of Airis on all current Airis
  Projects and Airis Corporate Opportunities

- Allowing Kaplan to use Airis E-mail

- Allowing Kaplan to attend any and all meetings
  of Airis projects and Airis corporate
  opportunities

- Allowing Kaplan to perform any and all work on
  behalf of Airis

- Usurping and misappropriating Airis' name and
  likeness, Airis resources, Airis projects,
  Airis contracts, Airis Corporate
  Opportunities, and Airis Work product

## MANIPULATION OF NAP CASH FLOW

## CONCEALMENT AND MISREPRESENTATIONS

59.   Defendants Kaplan, RFactor, and Does 1-50, unbeknownst to Airis and Plaintiff have been manipulating the cash flow of NAP since 2004. Without the knowledge or authorization Airis and Plaintiff, RFactor approved of the following actions of Roland Olsson. Roland Olsson, Airis' minority equity participant approached the NAP board in 1994 to request a modification that would diminish Airis' participation in the existing cash flow.  The net effect of this modification requested by Olsson creates a diminished value of the Airis' participation in the asset's cash flow. This modification approved without the authority of Airis and Plaintiff creates less income for Airis, thereby reducing value of the Airis asset in a net present value model.  This conspiracy to manipulate, conceal and failure to disclose the cash flow of NAP has been done to the detriment of Airis and has caused damage to Airis and Plaintiff.

60.   Moreover, on or about March 10, 2005, Roland Olsson sent an e-mail claiming that a cash call was required by Airis. The e-mail was sent to Plaintiff, Winn Campbell, corporate Counsel for Airis, Hal Shivers, an Airis consultant and RFactor. Airis' Corporate Counsel advised that he does not believe the cash call is necessary.  Hal Shivers commented that he believed the cash call was a "set up" by Kaplan,

44

RFactor and Does 1-50.  Plaintiff alleges on information and belief that Defendants and Does 1-50 have orchestrated this misrepresentation in an effort to further injure Airis and devalue the Airis NAP asset.  The timing of this communication also comes at a time when RFactor has offered to buy out Plaintiff of his interest in Airis.  Further demonstrating the true motives of RFactor in manipulating Airis' assets and attempting to usurp Airis corporate opportunities so that Airis is left with nothing but financial ruin. RFactor is attempting to manipulate the NAP asset and cash flow so that NAP is shown to be worth less than its true value.

61.  RFactor and Kaplan must be immediately enjoined from:

- Manipulating the cash flow of NAP
- Providing false and fraudulent information regarding cash calls of Airis

### FIRST CAUSE OF ACTION

**(Misappropriation of Trade Secrets in violation of the Uniform Trade Secrets Act, California Civil Code §3426, against Defendants and Does 1-50)**

62. Plaintiff hereby realleges paragraphs 1 through 59 of the complaint as though fully set forth herein.

45

63. RFactor and Does 1-50 without the knowledge of Airis and Plaintiff have disclosed trade secret information of Airis for the benefit of each defendant individually and at the detriment of Airis.  When Airis attempted to protect such trade secret information, RFactor demanded that all such protections be stopped.

64.  Defendants have also attempted to misappropriate Airis work product, designs of Airis projects, formulas for putting projects together and financing Airis projects and overall contacts and marketing materials, all to the detriment of Airis.

65.  Defendants have wrongfully disclosed such trade secret information to third parties, for their personal benefit and to the detriment of Airis.

66.  Airis project designs, work product, formulas for putting projects together, project financing, contacts and marketing materials are protected as a trade secret under the Uniform Trade Secrets Act ("UTSA"), California Civil Code §3426, adopted in 1984, which defines trade secrets as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: "(1) derives independent economic value, actual or potential, form not being generally known to the public or to other persons who can obtain economic value from its disclosure; and (2) is subject to efforts that are

1   reasonable under the circumstances to maintain its
2   secrecy."
3       67. Airis has taken reasonable steps, under the
4   Uniform Trade Secrets Act, to protect the
5   confidentiality of its trade secret information
6   including:
7       • Taking Reasonable precautions against industrial
8   espionage;
9       • Marking documents "confidential";
10      • Use of "confidentiality" legends, warnings and
11  agreements;
12      • Taking technical precautions, such as a "need to
13      know" system by different individuals or
14      departments;
15      68.  Airis' trade secrets have independent economic
16  value and have been instrumental in allowing Airis to
17  be the only on airport aviation developer in the world
18  to build the amount of projects at major HUB airports
19  in the United States.  The conduct of defendants
20  RFactor, JFactor, Kaplan, and Does 1-50 evidences the
21  conscious disregard with which Defendants failed to
22  perform duties with regard to maintaining the
23  confidentiality of Airis trade secrets and not use such
24  trade secrets for defendants' own personal benefit and
25  at the detriment of Airis. The conduct of Defendants,
    and each of them, as alleged hereinabove, constitutes a

violation of California Civil Code section 3344 due to the knowing and unauthorized use by Defendants, and each of them, of Airis' architectural renderings and photograph, persona for commercial purposes.  Airis' right to call such projects its own work product has commercial value.

69. Airis never approved, authorized or consented to the commercial use(s) of Airis' architectural drawings and/or persona as alleged herein.  When Plaintiff became aware of Defendants' unauthorized uses of Airis' work product.  Airis demanded that Defendants cease and desist and provide an accounting.

70. As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each them, Plaintiffs have been damaged and exploited in an amount that is not yet fully ascertainable but which is believed to be in the millions of dollars based on, among other things:  (a) the fair market value of a license granting the right to commercially use Airis' work product and/or likeness; (b) the amounts that advertisers have been willing to pay for the right to commercially use Airis' name and/or likeness; and (c)

based on the potential loss or dilution of value of this asset and property right as a result of the unauthorized use by Defendants; and (d) the amount by which Defendants have been unjustly enriched by their wrongful conduct.

71. When Plaintiff has ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly.

72. As a direct and proximate result of the aforesaid wrongful acts of Defendants, an each of them, Plaintiff has incurred and will continue to incur substantial attorneys' fees and costs in connection with this litigation pursuant to section 3344 of the California Civil Code.

73.   Plaintiff alleges on information and belief that the wrongful conduct of defendants, and each of them, as alleged herein, was fraudulent, oppressive and malicious, and done in conscious disregard for the rights of Airis and Plaintiff as a shareholder derivative.  As a result, Plaintiff and Airis are entitled to recover from defendants' wrongful conduct,

and each of them, exemplary and punitive damages pursuant to California Civil Code section 3294.

74. As a direct and proximate result of defendants' misappropriation of Airis' trade secrets, Airis has been damaged in an amount exceeding $10,000,000, together with interest as provided by law.

75. As a direct and proximate result of defendants' conduct, plaintiff as a shareholder derivative has been forced to incur costs to retain attorneys to pursue its claim for damages.

### SECOND CAUSE OF ACTION
### (Conspiracy to Defraud against
### Defendants and DOES 1-50)

76. Plaintiff hereby realleges paragraphs 1 through 75 of the complaint as though fully set forth herein.

77. Defendants participated in, agreed, and conspired to defraud Airis and Plaintiff and drive Plaintiff out of business the company by making false representations and omissions of material facts. Such false and fraudulent representations included but are not limited to the following:

- Falsely representing to Plaintiff that he and defendants attended meetings with GECAS that RFactor was acting on behalf of Airis and concealing fro Plaintiff the fact that he had told GECAS and others

that Plaintiff is no longer a principal or
participant of Airis and that others would take
Plaintiff's place.

- Falsely representing that the February 10, 2005
  Meeting was a Meeting of Airis with Airis attorneys,
  Airis personnel and Airis consultants to discuss the
  business of Airis business, including Airis
  Corporate Opportunities, when RFactor's secret
  agenda and the agenda of defendants was that the
  Meeting was set up for the purpose of attempting to
  take Airis Corporate Opportunities for RFactor's own
  personal benefit and benefit of defendants;

- Falsely representing RFactor's proposed inflated
  budgets for Airis Corporate Opportunities such as
  CIELOS, GECAS, Swissport, Star Alliance were
  necessary and required to proceed within finite time
  deadlines, concealing RFactor's true intent and goal
  of (1) knowing plaintiff and Airis would reject the
  unreasonable demands and (2) wrongly claiming the
  Airis Corporate Opportunities for RFactor
  individually;

- Falsely representing that RFactor did not give
  Kaplan trade secret information including detailed
  information regarding the CAC closing, Airis

projects, Airis past formulas of designing,
developing and financing past Airis projects;

- Falsely representing that RFactor was working for
  the benefit of Airis since the SFO project in
  October, 2003 until the present, when in reality
  since the SFO project and with each Airis Corporate
  Opportunity, including CIELOS, Star Alliance and
  GECAS, RFactor has been working for his own
  individual benefit and the benefit of defendants and
  Does 1-50.

- Falsely representing that RFactor and defendants had
  no knowledge of the relationship among Paragon, SPF,
  MED and Airis competitors.

- Falsely representing that defendants were using
  Airis resources, personnel, name, good will, work
  product, contacts and trade secrets for the benefit
  of Airis when in fact defendants were using all of
  the above for their own individual gain and at the
  detriment of Airis;

- Falsely representing and manipulating the NAP cash
  flow and/or claiming cash calls to devalue the NAP
  Airis asset, so that the overall value of Airis and
  its current assets are devalued and RFactor can buy
  Airis at a "fire sale," price.

- RFactor concealing the fact that he wrongfully
  requested John Dixon, whose companies are a

competitor with Airis to provide funding for the SFP project.

- Kaplan and RFactor concealing that SPF and Paragon are competitors of Airis, and representing that Kaplan and Paragon are working for the benefit of Airis and on behalf of Airis, when Kaplan was working only for the individual benefit of RFactor and at the detriment of Airis

- Kaplan and RFactor representing that they are working on behalf of Airis and concealing that for sometime Kaplan and RFactor have been conspiring to misappropriate and usurp Airis Corporate Opportunities, Airis resources, Airis trade secret, Airis confidential information, Airis projects, Airis' name and likeness, and Airis work product all to the detriment of Airis and for their own personal benefit and pecuniary gain.

78.   In furtherance of the conspiracy, each of the named defendants committed tortious and overt acts, to promote, perpetrate, and further the fraud alleged herein, with knowledge of or belief in the falsity of the representations made by RFactor and JFactor, Kaplan with the intent that such representations be acted upon by Airis and Plaintiff on behalf of Airis.

79.  Plaintiff and Airis detrimentally relied on such representations, all of which has caused Airis substantial damage and injury.

80.  The agreement between such Defendants, and any one of them or their agents, contemplated the accomplishment of the illegal act of defrauding Airis.

81.  Such agreement was an intentionally made decision to participate in and/or personally benefit from a conspiracy with a view to further its ends to be achieved.

82.  RFactor, JFactor, Kaplan and Does 1-50 cooperated with each other in such agreement.

83.  None of the Defendants or their lawful agents disassociated themselves from the plan or agreement by an affirmative action transmitted to all other Defendants.

84.  The conspiracy as alleged herein is a group of related activities having equal importance.

85.  Plaintiff on behalf of Airis and Airis at all times, believed in the truth of the representations made by defendants RFactor, JFactor and Kaplan. Had Airis and Plaintiff known of the fraudulent conduct of Kaplan, Plaintiff would not have allowed Kaplan to act as a consultant to Airis or to attend meetings on behalf of Airis with airline and business clients.

86. As a proximate result of the Defendants' acts done in furtherance of such scheme and conspiracy, Airis and Plaintiff on behalf of Airis have been severely and substantially damaged. Plaintiff alleges on information and belief that the wrongful conduct of Defendants, and each of them, as alleged herein, was fraudulent, oppressive and malicious, and done in conscious disregard for the rights of Airis and Plaintiff as a shareholder derivative. As a result, Plaintiff and Airis are entitled to recover from Defendants' wrongful conduct, and each of them, actual, consequential, exemplary and punitive damages pursuant to California Civil Code section 3294.

### THIRD CLAIM FOR RELIEF

### (BREACH OF FIDUCIARY DUTY AGAINST RFACTOR)

87. Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 86 as though fully set forth herein.

88. As an officer, director, and manager of Airis, RFactor owes fiduciary duties to Airis and Plaintiff,

the other director, officer and shareholders of the company.

89. By the actions described above, RFactor breached his fiduciary duties to Airis and Plaintiff by engaging in the following wrongful conduct:

- RFactor's wrongful usurpation of the CIELOS, Star Alliance, and GECAS projects, which are Airis Corporate Opportunities;

- RFactor's self dealing in connection with the wrongful use of Airis resources, Airis name and likeness, Airis' work product, good will and trade secrets for the personal benefit of RFactor and the benefit of defendants and other Airis competitors.

- RFactor's further self dealing and misappropriation of attempting to take Airis itself, Airis contracts such as NAP and offering Airis, its contracts and cash without the

authority of Airis and plaintiff to third parties
such as GECAS.

- RFactor using his position as an officer and
  director of Airis to engage in self-dealing,
  conspiracy and misrepresentations with other
  Defendants

- disclosing Airis trade secrets and confidential
  information to Kaplan and RFactor for their own
  personal benefit at the detriment of Airis;

- manipulating cash flow projections on the NAP
  project;

- Wrongfully misappropriating Airis' name,
  reputation, Airis projects, all RFactor and
  defendants own personal benefit, and the benefit
  of Defendants and Airis' competitors and Does 1-
  50.

- Misappropriating Airis' right of publicity of its
  name and work product without the authorization
  and approval of Airis and Plaintiff.

- Plaintiff alleges on information and belief that defendants and Does 1-50 used Airis' name, Airis' projects, Airis' personnel, Airis' resources in a concealed and calculated effort to usurp Airis' corporate opportunities, and push Plaintiff out of Airis through manipulation, misrepresentation to Plaintiff and third parties with the intent of obtaining a financial benefit and pecuniary gain for defendants and Does 1-50.

- RFactor intentionally misrepresented that he and Defendants were acting as "Airis," when in fact defendants and Does 1-50 were acting for their own pecuniary interest and gain, all at the detriment of Airis and Plaintiff.

- Concealing from Airis and Plaintiff their misappropriation of the Airis name, reputation, trade secrets, resources, Airis contracts with third parties and Airis present and future projects. This was done all at the detriment of Airis and its shareholders and without the consent of Airis and Plaintiff.

58

- Damaging Airis' reputation and standing in the Aviation and Development industry and have damaged Airis' goodwill, by such misappropriations, manipulations and misrepresentations. Defendants' conduct has all been to the detriment of Airis and its shareholders.

- Knowingly, fraudulently and without authorization, misrepresenting and misappropriating Airis' name, projects, contracts with third parties, trade secret contacts, resources, Airis personnel, the value of  Airis' projects in a calculated effort to usurp Airis' corporate opportunities for Defendants' and Does 1-50 own pecuniary benefit. RFactor, Defendants and Does 1-50 also concealed their actions from Plaintiff, Airis employees and Airis Corporate attorneys.

- Wrongfully accepting funds from a competitor in connection with the SFO project;

- Wrongfully disclosing trade secrets and confidential information to Kaplan and Defendants

so that Defendants could use such information for their personal benefit and to the detriment of Airis.

- Wrongfully requesting Airis counsel and plaintiff withdraw a cease and desist demand sent on behalf of Airis for Kaplan and Dixon and the Family of Mallory & Evans Companies to stop misappropriating and misrepresenting Airis work product, Airis architectural designs, Airis projects which misrepresent Airis work as being the work of SPF-Group, Mallory & Evans Development Group, and Paragon.

- Wrongfully allowing Airis competitors to misappropriate Airis work product Airis architectural designs, Airis projects which misrepresent Airis work as being the work of SPF-Group, Mallory & Evans Development Group, and Paragon.

- Wrongly demanding that Airis competitors become Airis members in any present or future Airis projects.

90.   All of these acts have been to the detriment of Airis and its member Plaintiff, together with such other wrongful acts that plaintiff and Airis may discover in the course of discovery of this matter, including waste of corporate assets. RFactor have breached his fiduciary duties to Airis and Plaintiff RFactor's breaches of fiduciary duties have caused both actual and consequential damages to Airis and Plaintiff. Plaintiff alleges on information and belief that the wrongful conduct of Defendants, and each of them, as alleged herein, was fraudulent, oppressive and malicious, and done in conscious disregard for the rights of Airis and plaintiff as a shareholder derivative.   As a result, Plaintiff and Airis are entitled to recover from defendants' wrongful conduct, and each of them, exemplary and punitive damages pursuant to California Civil Code section 3294.

### FOURTH CAUSE OF ACTION

### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS)

91.   Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 90, as though fully set forth herein.

92. An economic relationship between Airis and prospective clients such as Star Alliance, CIELOS, Swissport and GECAS existed with the probability that this relationship would result in future economic benefit.  RFactor, Kaplan, JFactor and Paragon were aware of this relationship.

93. Defendants and Does 1-50, with the intent to disrupt these relationships, made false designations, representations and misappropriated Airis, name, resources, work product, projects, contracts and trade secrets.  As a result, Plaintiff and Airis prospective clients because of the intentional and wrongful acts of Defendants and Does 1-50, resulting in economic harm. Kaplan and Paragon further interfered with such Airis contracts and economic opportunities with third parties by engaging in the following conduct:

- Representing that he was attending meetings on behalf of Airis with third parties, when he was concealing the fact that he was attending such meetings as a competitor of Airis;

- Wrongfully using Airis e-mail and claiming to be acting on behalf of Airis, when he was acting only on behalf of RFactor and himself individually and for their own personal pecuniary interest and acting on behalf of Airis competitors;

- Wrongfully conspiring with RFactor to use Airis trade secrets and Airis confidential information to the detriment of Airis and for the pecuniary benefit of Kaplan and RFactor individually;

- Wrongfully manipulating NAP cash flow and value to the detriment of Airis;

- Wrongfully competing with Airis as Paragon, and misrepresenting that he is the sole owner of Paragon when Paragon is within the Mallory & Evans family of companies, a direct competitor of Airis.

94.  Plaintiff alleges on information and belief that the wrongful conduct of defendants, and each of them, as alleged herein, was fraudulent, oppressive and malicious, and done in conscious disregard for the rights of Airis and Plaintiff as a shareholder derivative.  As a result, Plaintiff and Airis are entitled to recover from Defendants' wrongful conduct, and each of them, exemplary and punitive damages pursuant to California Civil Code section 3294.

The acts of Defendants and Does 1-50 are willful and malicious and therefore, Plaintiff as a shareholder derivative and Airis are entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF

## (INTENTIONAL INTERFERENCE WITH CONTRACT AGAINST ALL DEFENDANTS)

95. Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 92, as though fully set forth herein.

96. Airis had enforceable contracts between itself and clients such as NAP, CIELOS and others.

97. Defendants were aware of the existence of these contracts and yet have attempted to interfere with these contractual relationships to the detriment of Airis. As an example, defendants and manipulating the NAP cash flow and/or claiming cash calls to devalue the NAP Airis asset, so that the overall value of Airis and its current assets are devalued and RFactor can buy Airis at a "fire sale," price. Kaplan and Paragon further interfered with such Airis contracts and economic opportunities with third parties by engaging in the following conduct:

- Representing that he was attending meetings on behalf of Airis with third parties, when he was

64

concealing the fact that he was attending such meetings as a competitor of Airis;

- Wrongfully using Airis e-mail and claiming to be acting on behalf of Airis, when he was acting only on behalf of RFactor and himself individually and for their own personal pecuniary interest and acting on behalf of Airis competitors;

- Wrongfully conspiring with RFactor to use Airis trade secrets and Airis confidential information to the detriment of Airis and for the pecuniary benefit of Kaplan and RFactor individually;

- Wrongfully manipulating NAP cash flow and value to the detriment of Airis;

- Wrongfully competing with Airis as Paragon, and misrepresenting that he is the sole owner of Paragon when Paragon is within the Mallory & Evans family of companies, a direct competitor of Airis.

98. As a result of the intentional acts of defendants Airis has been damaged.

99. Plaintiff alleges on information and belief that the wrongful conduct of defendants, and each of them, as alleged herein, was fraudulent, oppressive and malicious, and done in conscious disregard for the rights of Airis and Plaintiff as a shareholder derivative. As a result, Plaintiff and Airis are

entitled to recover from defendants' wrongful conduct, and each of them, exemplary and punitive damages pursuant to California Civil Code section 3294.

**SIXTH CLAIM FOR RELIEF**

**(INTENTIONAL MISREPRESENTATION AGAINST DEFENDANTS)**

100.   Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 99 as though fully set forth herein.

101.   Defendants RFactor, JFactor and Kaplan made material misrepresentations indicating that Defendants were was acting on behalf of Airis and for the benefit of Airis. Defendants engaged in false designations, representations and misappropriation of Airis name, good will, resources and Airis work product. Defendants misrepresentations included the following:

- RFactor falsely representing to Plaintiff that he and Defendants attended meetings with GECAS that RFactor was acting on behalf of Airis and concealing from Plaintiff the fact that he had told GECAS and others that Plaintiff is no longer a principal or participant of Airis and that others would take Plaintiff's place.

- RFactor falsely representing that the February 10, 2005 Meeting was a Meeting of Airis with Airis attorneys, Airis personnel and Airis consultants to discuss the business of Airis business, including Airis corporate opportunities, when RFactor's secret agenda and the agenda of defendants was that the Meeting was set up for the purpose of attempting to take Airis Corporate Opportunities for RFactor's own personal benefit and benefit of defendants;

- RFactor and defendants falsely representing a proposed inflated budgets for Airis' corporate opportunities such as CIELOS, GECAS, Swissport, Star Alliance were necessary and required to proceed within finite time deadlines, concealing RFactor's true intent and goal of (1) knowing Plaintiff and Airis would reject the unreasonable demands and (2) wrongly claiming the Airis' corporate opportunities for RFactor individually;

- RFactor falsely representing that RFactor did not give Kaplan trade secret information including detailed information regarding the CAC closing, Airis projects, Airis past formulas of designing, developing and financing past Airis projects;

- RFactor and defendants falsely representing that RFactor and defendants were working for the benefit of Airis since the SFO project in October, 2003

67

until the present, when in reality since the SFO
project and with each Airis Corporate Opportunity,
including CIELOS, Star Alliance and GECAS, RFactor,
JFactor and Kaplan and Defendants have been working
for their own individual benefit and the benefit of
Defendants and Does 1-50.

- RFactor, Kaplan and and Defendants falsely
  representing that RFactor and defendants had no
  knowledge of the relationship among Paragon, SPF,
  MED and the "Family of Mallory & Evans Companies and
  the fact that these companies have acted as Airis
  competitors.

- Kaplan falsely representing that he is not a
  principal of SPF and that Paragon, his company is
  not part of the Mallory & Evans family of Companies

- Falsely representing that defendants were using
  Airis resources, personnel, name, good will, work
  product, contacts and trade secrets for the benefit
  of Airis when in fact Defendants were using all of
  the above for their own individual gain and at the
  detriment of Airis;

- Falsely representing and manipulating the NAP cash
  flow and/or claiming cash calls to devalue the NAP
  Airis asset, so that the overall value of Airis and
  its current assets are devalued and RFactor can buy
  Airis at a "fire sale," price.

68

- Falsely representing the cash flow and cash call requirements for NAP

Kaplan and Paragon further interfered with such Airis contracts and economic opportunities with third parties by engaging in the following conduct:

- Representing that he was attending meetings on behalf of Airis with third parties, when he was concealing the fact that he was attending such meetings as a competitor of Airis;

- Wrongfully using Airis e-mail and claiming to be acting on behalf of Airis, when he was acting only on behalf of RFactor and himself individually and for their own personal pecuniary interest and acting on behalf of Airis competitors;

- Wrongfully conspiring with RFactor to use Airis trade secrets and Airis confidential information to the detriment of Airis and for the pecuniary benefit of Kaplan and RFactor individually;

- Wrongfully manipulating NAP cash flow and value to the detriment of Airis;

- Wrongfully competing with Airis as Paragon, and misrepresenting that he is the sole owner of Paragon when Paragon is within the Mallory & Evans family of companies, a direct competitor of Airis.

102.   When Defendants made these representations, they knew them to be false.   The misrepresentations

69

were made with the intent to defraud and induce reliance.

103.  Airis and Plaintiff justifiably relied on the misrepresentations of Defendants because they were in a fiduciary relationship.

104.  As a result of Defendants' intentional misrepresentations, Airis and Plaintiff have been damaged in and amount to be determined at trial in the form of lost profits and business opportunities. Defendants have caused actual and consequential damages in an amount to be determined at trial. The acts of defendants and Does 1-50 are willful and malicious and therefore, Plaintiff as a shareholder derivative and Airis are entitled to punitive damages.

**SEVENTH CLAIM FOR RELIEF**

**(Misappropriation of Common Law Right of Publicity Against Defendants)**

105.  Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 104, inclusive, as though fully set forth herein.

106.  Airis is, and at all times relevant hereto has been an on-airport aviation developer recognized in

the aviation industry as the only developer who has

been able to develop airport projects of the magnitude

Airis has over the past 10 years.  Airis is unique in

that it is the only aviation developer who has

successfully developed and completed large air-cargo

facilities at Hub airports of JFK, Miami and Newark.

Through hard work in the aviation industry, Airis'

signature projects have become very valuable and are

invested with substantial goodwill.  Airis has a right

of publicity – a property right with substantial

commercial value – which Airis has not agreed to

transfer, in whole or in part, to Defendants for the

purposes alleged herein.

107.  Defendants' use of Airis' name and likeness

through plaintiffs work product in connection with

their representations to third parties and to Plaintiff

and through promotional advertisement,  without Airis'

consent constituted a violation and misappropriation of

Airis' common law right of publicity in that

Defendants, and each of them, misappropriated Airis'

name, likeness, good will, resources work product,

architectural drawings and projects and persona and

used them in a prominent and clearly recognizable

manner for commercial purposes for their own individual benefit for personal gain and increase their personal profits. Kaplan and Paragon further misappropriated Airis contracts and economic opportunities with third parties by engaging in the following conduct:

- Representing that he was attending meetings on behalf of Airis with third parties, when he was concealing the fact that he was attending such meetings as a competitor of Airis;

- Wrongfully using Airis e-mail and claiming to be acting on behalf of Airis, when he was acting only on behalf of RFactor and himself individually and for their own personal pecuniary interest and acting on behalf of Airis competitors;

- Wrongfully conspiring with RFactor to use Airis trade secrets and Airis confidential information to the detriment of Airis and for the pecuniary benefit of Kaplan and RFactor individually;

- Wrongfully manipulating NAP cash flow and value to the detriment of Airis;

- Wrongfully competing with Airis as Paragon, and misrepresenting that he is the sole owner of Paragon when Paragon is within the Mallory & Evans family of companies, a direct competitor of Airis.

108.   As a direct and proximate result of the aforesaid wrongful acts of Defendants, Airis and Plaintiff has been damaged in an amount that is not yet fully ascertainable but is believed to be in excess of millions of dollars based on, among other things: (a) the potential loss or dilution of value of this asset and property right as a result of the unauthorized use by Defendants; and (b) the amount by which Defendants have been unjustly enriched by their wrongful conduct. When Plaintiff has ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly.

109.   Plaintiff alleges on information and belief that the wrongful conduct of Defendants as alleged herein, was fraudulent, oppressive and malicious, and done with conscious disregard for Plaintiffs' rights. As a result, Plaintiff is entitled to recover from Defendants exemplary and punitive damages pursuant to California Civil Code section 3294.

110.   Defendants are jointly and severely liable for such damage.

## EIGHTH CLAIM FOR RELIEF

### (False designation or Representation in Violation of 15 U.S. C. §1125 (a) (Lanham Act) Against Defendants)

111.  Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 110 inclusive, as though fully set forth herein.

112.  Plaintiff alleges on information and belief that defendants violated section 43 of the Lanham Act, 15 U.S.C. §§ 1125 (a) and (c), by expressly and impliedly making false designations or representations of origin when engaging in the following acts; (1) misappropriating Airis' name, likeness, projects, work product, and resources in connection with misrepresentations made to third parties; (2) misappropriating Airis' name, likeness work product generally enhancing the goodwill of defendants.  Kaplan and Paragon further misappropriated Airis right of publicity including contracts and economic opportunities with third parties by engaging in the following conduct:

- Representing that he was attending meetings on behalf of Airis with third parties, when he was

74

concealing the fact that he was attending such meetings as a competitor of Airis;

- Wrongfully using Airis e-mail and claiming to be acting on behalf of Airis, when he was acting only on behalf of RFactor and himself individually and for their own personal pecuniary interest and acting on behalf of Airis competitors;

- Wrongfully conspiring with RFactor to use Airis trade secrets and Airis confidential information to the detriment of Airis and for the pecuniary benefit of Kaplan and RFactor individually;

- Wrongfully manipulating NAP cash flow and value to the detriment of Airis;

- Wrongfully competing with Airis as Paragon, and misrepresenting that he is the sole owner of Paragon when Paragon is within the Mallory & Evans family of companies, a direct competitor of Airis.

113.   As set forth herein, Plaintiff alleges on information and belief that Defendants have intentionally and knowingly misappropriated, exploited, and used the aforesaid valuable property rights owned solely and exclusively by Airis for their own personal gain, promotion and benefit.

114.   Defendants' misappropriation of Airis' valuable publicity and property rights as set forth herein constitutes false and deceptive representations and promotion to third parties which was intended to cause, and has caused confusion and deception of such third parties by falsely and fraudulently suggesting and representing, among other things: (1)RFactor is acting on behalf of Airis, when in fact he is acting for his own personal benefit and the benefit of Airis' competitors; (2) that Airis is profiting from the aforesaid misappropriation; and (3) that Defendants SPF, Kaplan and the other Defendants were somehow affiliated with Airis.

115.   Defendants' misappropriation of Airis' valuable publicity and property rights, as set forth herein, has resulted in a dilution of the value of those rights, thereby diminishing their value all to the detriment and damage of Plaintiff.  Airis is entitled to an injunction against Defendants' use of Plaintiffs' valuable publicity and property rights pursuant to 15 U.S.C. §1125(c).

116.   As a direct and proximate result of defendants' wrongful conduct, Plaintiff has been damaged in an amount that is not yet fully ascertainable but is believed to be in the millions of dollars based on, among other things:   (a) the potential loss or dilution of value of this asset and property right as a result of the unauthorized use by Defendants; and (b) the amount by which Defendants have been unjustly enriched by their wrongful conduct.   When Plaintiff has ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly.

117.   Plaintiff alleges on information and belief that it was reasonably foreseeable at the time Defendants did the wrongful acts alleged herein that republication and further dissemination by Defendants on to third parties caused further damage to Airis for which RFactor, JFactor, Kaplan and Paragon and Defendants are jointly and severally liable.   Thus, Plaintiff is entitled, pursuant to 15 U.S.C. §1117(a)

to three (3) times defendants' profits, or actual

damages, whichever is greater, plus costs of suit.

118.   As a direct and proximate result of the

Defendants' wrongful acts, Plaintiff has incurred and

will continue to incur substantial attorneys' fees and

costs.   Plaintiff is entitled to an award of their

attorneys' fees and costs pursuant to 15 U.S.C. §§1116

and 1117.

### NINTH CLAIM FOR RELIEF

### (Unfair Business Practices and Unfair Competition Against Defendants)

119.   Plaintiff repeats, realleges, adopts, and

incorporates each and every allegation contained in

Paragraphs 1 through 118, as though fully set forth

herein.

120.   Plaintiff, is informed and believes and based

thereon alleges that Defendants, by their acts and

omissions alleged herein, have engaged in unlawful,

unfair and fraudulent business practices, unfair

competition and false advertising, and have utilized

the aforesaid improper, unlawful, and tortious means

to unjustly enrich themselves by, among other things, misappropriating, using and exploiting, without right, title or authority, the aforesaid valuable publicity and property rights owned solely and exclusively by Airis. Such wrongful misappropriation and exploitation of property rights include:

- RFactor's wrongful usurpation of the CIELOS, Star Alliance, and GECAS projects, which are Airis Corporate Opportunities;

- RFactor's self dealing in connection with the wrongful use of Airis resources, Airis name and likeness, Airis' work product, good will and trade secrets for the personal benefit of RFactor and the benefit of Defendants and other Airis competitors.

- RFactor's further self dealing and misappropriation of attempting to take Airis itself, Airis contracts such as NAP and offering Airis, its contracts and cash without the

authority of Airis and plaintiff to third parties
such as GECAS.

- RFactor using his position as an officer and
  director of Airis to engage in self-dealing,
  conspiracy and misrepresentations with other
  defendants

- disclosing and misappropriation of Airis trade
  secrets and confidential information to Kaplan and
  RFactor for their own personal benefit at the
  detriment of Airis;

- manipulating and misrepresenting cash flow
  projections on the NAP project;

- Wrongfully using Airis' name, reputation, Airis
  projects, all RFactor and Defendants own personal
  benefit, and the benefit of defendants and Airis'
  competitors and Does 1-50.

- Misappropriating Airis' right of publicity of
  its name and work product without the authorization
  and approval of Airis and Plaintiff.

- Plaintiff alleges on information and belief that defendants and Does 1-50 used Airis' name, Airis' projects, Airis' personnel, Airis' resources in a concealed and calculated effort to usurp Airis Corporate Opportunities, and push Plaintiff out of Airis through manipulation, misrepresentation to Plaintiff and third parties with the intent of obtaining a financial benefit and pecuniary gain for defendants and Does 1-50.

- Knowingly, fraudulently and without authorization, misrepresenting and misappropriating Airis' name, projects, contracts with third parties, trade secret contacts, resources, Airis personnel, the value of Airis' projects in a calculated effort to usurp Airis' corporate opportunties for defendants' and Does 1-50 own pecuniary benefit. RFactor, defendants and Does 1-50 also concealed their actions from Plaintiff, Airis employees and Airis' corporate attorneys.

- Wrongfully disclosing trade secrets and confidential information to Kaplan and defendants

81

so that Defendants could use such information for their personal benefit and to the detriment of Airis.

Kaplan and Paragon further misappropriated Airis contracts and economic opportunities with third parties by engaging in the following conduct:

- Representing that he and Paragon were attending meetings on behalf of Airis with third parties, when he was concealing the fact that he was attending such meetings as a competitor of Airis;

- Wrongfully using Airis e-mail and claiming to be acting on behalf of Airis, when he was acting only on behalf of RFactor and himself individually and for their own personal pecuniary interest and acting on behalf of Airis competitors, including Paragon;

- Wrongfully conspiring with RFactor to use Airis trade secrets and Airis confidential information to the detriment of Airis and for the pecuniary benefit of Kaplan and RFactor individually;

- Wrongfully manipulating NAP cash flow and value to the detriment of Airis;

- Wrongfully competing with Airis as Paragon, and misrepresenting that he is the sole owner of

Paragon when Paragon is within the Mallory & Evans

family of companies, a direct competitor of Airis.

121.   The acts of defendants constitute unfair

competition, unfair business practices and false

advertising in violation of, among other things,

California Business and Professions Code sections 17200

through 17204, 17500, and 17535.

122.   Defendants' unfair, misleading and deceptive

use of Airis name, work product, projects,

architectural drawings and Airis projects have created

confusion with third party clients and in the public's

mind creating the false appearance that defendants who

are acting for Airis, when they are acting for their

own individual benefit.   This is causing a dilution of

the value in Airis' aforesaid publicity rights.

123.   As a direct and proximate result of

defendants' wrongful conduct alleged herein, Airis has

been damaged in an amount that is not yet fully

ascertainable but is believed to be millions of dollars

based on, among other things: (a) the potential loss or

dilution of value of this asset and property right as a

83

result of the unauthorized use by defendants; and (b)
the amount by which defendants have been unjustly
enriched by their wrongful conduct.

124.   When Airis and plaintiff have ascertained the
full amount of its damages, it will seek leave of Court
to amend this Complaint accordingly.

### TENTH CLAIM FOR RELIEF

### (Unjust Enrichment Against Defendants)

125.   Plaintiff repeats, realleges, adopts, and
incorporates each and every allegation contained in
Paragraphs 1 through 124 inclusive as though fully set
forth herein.

126.   Defendants have been unjustly enriched and
benefited as a result of their wrongful acts.   Such
unjust enrichment and benefits include, but are not
limited to the amount of defendants' gross revenues
attributable to the improper use and misappropriation
of Airis' name, Airis resources, Airis' good will,
Airis' work product, Airis trade secrets, Airis
confidential information, Airis projects, Airis
contracts, Airis Corporate Opportunities, Airis itself,

84

manipulation of cash flow and misrepresentations and breaches of fiduciary duties by RFactor, wrongful use by Kaplan of Airis' e-mail as alleged herein.

127.   Defendants should be ordered disgorged and pay Airis and plaintiff the full amount by which they have been unjustly enriched.

## ELEVENTH CLAIM FOR RELIEF

### (For An Accounting Against Defendants)

128.   Plaintiff repeats, realleges, adopts, and incorporates each and every allegation contained in Paragraphs 1 through 127, inclusive as though fully set forth herein.

129.   Plaintiff and Airis alleges on information and belief that the defendants have profited as a result of their unauthorized use of Airis' name and likeness, Airis trade secrets, Airis confidential information, Airis resources, Airswork product and projects, Airis Corporate Opportunites with GECAS, CIELOS, Star Alliance, Airis contracts and other wrongful conduct and misappropriation as specifically described and alleged herein.

130.   Airis and plaintiff are entitled to that portion of defendants' profits attributable to the unauthorized misappropriation and wrongful use of Airis' work product, Airis' name and likeness, Airis trade secrets, Airis resources, Airis confidential information, Airis Corporate Opportunities such as CIELOS, GECAS and Star Alliance and others, Airis contracts Airis projects.   Defendants, and each of them, should be required to render a full accounting of revenues that they have received since they began the unauthorized commercial use of Airis name and likeness, Airis trade secrets, , Airis resources, Airis confidential information, Airis Corporate Opportunities such as CIELOS, GECAS and Star Alliance and others, Airis contracts Airis projects. The amount of these profits is presently unknown and cannot be ascertained without an accounting.

## TWELFH CLAIM FOR RELIEF

### (Constructive Trust Against Defendants)

131.   Plaintiff repeats, realleges, adopts, and incorporates each and every allegation contained in

86

Paragraphs 1 through 130 inclusive, as though fully set forth herein.

132. As alleged herein, defendants have wrongfully violated, misappropriated and usurped Airis' Corporate Opportunities with GECAS, CEILOS, and Star Alliance and others. Defendants have also misappropriated and abused Airis' name and likeness, Airis good will, Airis resources, Airis work product, Airis contacts, Airis trade secret and confidential information, Airis contracts and Airis Corporate Opportunities without Airis and plaintiff's authorization, for defendants' own personal gain and benefit. In addition, defendants have wrongfully pledged and offered without Airis and plaintiffs' knowledge or authorization: (1) The Company Airis; (2) the Airis NAP contract and cash, in a joint venture with GECAS, while claiming that any joint venture with GECAS is for the sole individual benefit of RFactor and defendants.

133. Plaintiff alleges on information and belief that as a result of the wrongful usurpation of Airis' corporate opportunities fully described herein

87

misappropriation and unauthorized use by defendants of

Plaintiff's valuable publicity and property rights as

alleged herein, defendants have received money and/or

other valuable consideration and benefits, and have

been unjustly enriched at the expense of Plaintiff and

will continue to receive money and/or other valuable

consideration and benefits in the future from the

unauthorized misappropriation, use and exploitation of

Plaintiff's publicity rights.

134.   As a direct and proximate result of the

aforesaid acts of misappropriation, use and

exploitation of Plaintiff's valuable publicity rights,

Defendants hold any and all money and/or other value

consideration and benefits received by them from their

misappropriation, use and other wrongful acts,

including interest thereon, as involuntary constructive

trustees in constructive trust for Plaintiffs.

**THIRTEENTH CLAIM FOR RELIEF**
**(REMOVAL OF FACTOR AS DIRECTOR FOR FRAUDULENT AND**
**DISHONEST ACTS AND GROSS ABUSE OF AUTHORITY AND**
**DISCRETION)**

135.   Plaintiff repeats, realleges, adopts, and

incorporates each and every allegation contained in

Paragraphs 1 through 134 inclusive, as though fully set forth herein.

136.   RFactor has been acting as one of the two Airis directors since March of 2002.  And at all times mentioned herein, R Factor has purported to act as a director for the defendant corporation.

137.   RFactor is only authorized to act in the interest of Airis and not in the interest of himself individually.  RFactor further is only authorized to use the name Airis, Airis resources, employees, attorneys, Airis trade secrets and Airis Corporate Opportunities for the interest of Airis and not for his individual and personal benefit or for the interest of his family members.

138.   RFactor is the holder of 50% of the Airis stock.

139.   Since March, 2002 unbeknownst to the other shareholder, officer and director, RFactor has breached his duty of loyalty to the Company and his fiduciary duties to Plaintiff and Airis by using his position as an officer and director of Airis to engage in self-

dealing, conspiracy and misrepresentations with other defendants, disclosing Airis trade secrets, wrongfully usurping Airis Corporate Opportunities, wrongfully pledging Airis, Airis contracts, manipulating cash flow projections, using Airis' name, reputation, Airis projects, all for his own benefit and the benefit of defendants and Does 1-50. Rfactor engaged in self-dealing and the conduct set forth herein with one or more individuals and/or entities including defendants and Does 1-50, for the purpose of expecting and/or receiving a financial gain, all to the detriment of Airis. In addition, RFactor and defendants have wrongfully misappropriated the Airis name, Airis' projects, Airis' contracts with third parties, Airis good will, Airis trade secrets and the work product of Airis for the personal benefit of RFactor and Does 1-50, all at the expense and detriment of Airis. RFactor, defendants and Does 1-50 have also attempted to usurp Airis corporate opportunities for their individual benefit and the benefit of defendants and at the expense and detriment of Airis and Plaintiff.

140.   RFactor has also misappropriated  Airis'
right of publicity of its name and work product without
the authorization and approval of Airis and Plaintiff.
Defendants and Does 1-50, have acted for their own
pecuniary gain and profit and at the expense of Airis.
Plaintiffs allege on information and belief that
defendants and Does 1-50 used Airis' name, Airis'
projects, Airis'personnel, Airis' resources in a
concealed and calculated effort to usurp Airis
Corporate Opportunities, and push Plaintiff out of
Airis through manipulation, misrepresentation to
Plaintiff and third parties with the intent of
obtaining a financial benefit and pecuniary gain for
defendants and Does 1-50. Defendants and Does 1-50
represented that they were acting as "Airis," when in
fact defendants and Does 1-50 were acting for their own
pecuniary interest and gain, all at the detriment of
Airis and Plaintiff.

141.   Defendants and Does 1-50 concealed from Airis
and Plaintiff their misappropriation of the Airis name,
reputation, trade secrets, resources, Airis contracts

91

with third parties and Airis present and future
projects. This was done all at the detriment of Airis
and its shareholders and without the consent of Airis
and plaintiff.

142.  Airis' highly valued name and work product
has been developed over the past 10 years. RFactor,
defendants and Does 1-50 have damaged Airis' reputation
and standing in the Aviation and Development industry
and have damaged Airis' goodwill, by such
misappropriations, manipulations and
misrepresentations. Defendants' conduct has all been to
the detriment of Airis and its shareholders.

143.  Airis never authorized, agreed or consented
to defendants' and Does 1-50 wrongful use of Airis'
name, Airis' resources, Airis' personnel, Airis
projects and Airis' trade secret, including contacts
developed over the past ten years.  Rather, Plaintiff
alleges on information and belief that defendants and
Does 1-50, knowingly, fraudulently and without
authorization, misrepresented and misappropriated
Airis' name, projects, contracts with third parties,

92

trade secret contacts, resources, Airis personnel, the
value of Airis' projects in a calculated effort to
usurp Airis Corporate Opportunties for defendants' and
Does 1-50 own pecuniary benefit. RFactor, defendants
and Does 1-50 also concealed their actions from
Plaintiff, Airis employees and Airis Corporate
attorneys.  RFactor has engaged in the following
actions of self dealing and in breach of his fiduciary
duty and duty of loyalty to the company:

- Misrepresenting to Plaintiff that he and defendants
  attended meetings with GECAS that RFactor was acting
  on behalf of Airis and concealing from Plaintiff the
  fact that he had told GECAS and others that
  Plaintiff is no longer a principal or participant of
  Airis and that others would take Plaintiff's place;
- Wrongfully offering the company Airis itself and the
  Airis NAP contract to GECAS for a proposed joint
  venture without the authority of Airis and, at the
  same time claiming the GECAS Airis Opportunity is
  RFactor's individual opportunity;
- Wrongfully claiming the GECAS Airis Corporate
  Opportunity is an Opportunity of RFactor
  individually;

- Wrongfully claiming that the Star Alliance Airis Corporate Opportunity is an individual opportunity of RFactor;

-  Wrongfully claiming the CIELOS Airis Corporate Opportunity is an individual opportunity for his own benefit, without the authority of Airis.

- Misrepresenting that the February 10, 2005 Meeting was a Meeting of Airis with Airis attorneys, Airis personnel and Airis consultants to discuss the business of Airis business, including Airis Corporate Opportunities, when RFactor's secret agenda and the agenda of defendants was that the Meeting was set up for the purpose of attempting to take Airis Corporate Opportunities for RFactor's own personal benefit and benefit of defendants;

- Misrepresenting RFactor's proposed inflated budgets for Airis Corporate Opportunities such as CIELOS, GECAS, Swissport, Star Alliance were necessary and required to proceed within finite time deadlines and concealed RFactor's true intent to force such unreasonable demands so that Plaintiff and Airis would reject the unreasonable demands and RFactor would wrongly claim the Airis Corporate Opportunities for himself;

- Misrepresenting that RFactor did not give Kaplan trade secret information and confidential

information including detailed information regarding the CAC closing, Airis projects, Airis past formulas of designing, developing and financing past Airis projects, when in fact RFactor disclosed all such trade secret information to Airis competitors all to the detriment of Airis;

- Misrepresenting that RFactor was working for the benefit of Airis since the SFO project in October, 2003 until the present, when in reality since the SFO project and with each Airis Corporate Opportunity, including CIELOS, Star Alliance and GECAS, RFactor has been working for his own individual benefit and the benefit of defendants and Does 1-50 and Airis competitors.

- Misrepresenting that defendants had no knowledge of the relationship among Airis competitors: Paragon, SPF and MED when RFactor in fact knew of the relationship and worked for the benefit of such competitors and himself individually.

- Misrepresenting that RFactor, JFactor, Roland Olsson and Kaplan were using Airis resources, personnel, name, work product, trade secrets, and good will for the benefit of Airis, when in fact RFactor was using the above for his own individual benefit and the benefit of Airis competitors.

- Rfactor in a conspiracy with Roland Olsson and David Kaplan manipulated the cash flow of NAP so that the value of the NAP asset appeared low and so that RFactor could buy Airis at a "fire sale price."

144. Plaintiff is informed and believes that defendant RFactor's conduct will continue if he is allowed to remain a member of the board of directors.

145. Wherefore plaintiff requests that defendant RFactor be cited to appear and answer the complaint;

146. That defendant RFactor be removed from office as a director of the corporation, defendant RFactor should in addition be barred from re-election as a director for a period of 3 years and pay restitution to the Company for the damage he has caused Airis.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

### AS TO THE FIRST CLAIM FOR RELIEF:

1. General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

2.   Exemplary and punitive damages in an amount according to proof at the time of trial;

3.   For an order that defendants hold any revenues and profits in trust for Airis;

4.   For a preliminary and permanent injunction enjoining defendants from committing any further violations of California Civil Code section 3344;

5.   For an award of reasonable attorneys' fees herein;

## AS TO THE SECOND CLAIM FOR RELIEF:

6.   General and special damages and disgorgement of Defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

7.   Exemplary and punitive damages in an amount according to proof at the time of trial;

8.   For an order that defendants hold any revenues and profits in trust for Airis and plaintiff;

9.   For a preliminary and permanent injunction enjoining defendants from committing any further wrongful acts as fully described and set forth herein;

## AS TO THE THIRD CLAIM FOR RELIEF:

97

10.  General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

11.  Exemplary and punitive damages in an amount according to proof at the time of trial;

12.  For an order that defendants hold any revenues and profits in trust for Airis and plaintiff;

13.  For a preliminary and permanent injunction enjoining defendant from committing any further acts in breach of his fiduciary duties as fully described and set forth herein;

14.  For an award of reasonable attorneys' fees herein;

**AS TO THE FOURTH CLAIM FOR RELIEF:**

15.  General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

16.  Exemplary and punitive damages in an amount according to proof at the time of trial;

17.  For an order that defendants hold any revenues and profits in trust for Airis and plaintiff;

18.  For a preliminary and permanent injunction enjoining defendants from committing any further wrongful acts as fully described and set forth herein;

19.  For an award of reasonable attorneys' fees herein;

### AS TO THE FIFTH CLAIM FOR RELIEF:

20.  General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

21.  Exemplary and punitive damages in an amount according to proof at the time of trial;

22.  For an order that defendants hold any revenues and profits in trust for Airis and plaintiff;

23.  For a preliminary and permanent injunction enjoining defendants from committing any further wrongful acts as fully described and set forth herein;

### AS TO THE SIXTH CLAIM FOR RELIEF:

24.  General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

25.  Exemplary and punitive damages in an amount according to proof at the time of trial;

26.  For an order that defendants hold any revenues and profits in trust for Airis and plaintiff;

27.  For a preliminary and permanent injunction enjoining defendants from committing any further wrongful acts as fully described and set forth herein;

28.  For an award of reasonable attorneys' fees herein;

### AS TO THE SEVENTH CLAIM FOR RELIEF:

29.  General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

30.  Exemplary and punitive damages in an amount according to proof at the time of trial;

31.  For an order that defendants hold any revenues and profits in trust for Airis;

32.  For a preliminary and permanent injunction enjoining defendants from committing any further violations of the common law right of publicity

100

33. For an award of reasonable attorneys' fees herein;

### AS TO THE EIGHTH CLAIM FOR RELIEF:

34. For an award of damages as provided under the Lanham Act according to proof at the time of trial;

35. For three (3) times Defendants' profits, or actual damages, whichever is greater, plus costs of suit pursuant to 15 U.S.C. §1117(a);

36. For a preliminary and permanent injunction enjoining Defendants from committing any further violations of 28 U.S.C. §1125(a) and (c);

37. For an order requiring Defendants to turn over all tangible items facilitating the commission of such violations, for destruction pursuant to 28 U.S.C. §1118;

38. For an award of reasonable attorneys' fees and costs incurred herein;

### AS TO THE NINTH CLAIM FOR RELIEF:

39. General and special damages and disgorgement of defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

40.  For an order that defendants hold any revenues
and profits in trust for Airis and plaintiff;

41.  For a preliminary and permanent injunction,
enjoining defendants from committing any further
violation of California Business & Professions Code
sections 17200 through 17204, 17500 and 17535;

<u>**AS TO THE TENTH CLAIM FOR RELIEF:**</u>

42.  For an award in the amount by which defendants
have been unjustly enriched;

<u>**AS TO THE ELEVENTH CLAIM FOR RELIEF:**</u>

43.  For a full and complete accounting from
Defendants concerning all monies or other things of
value received by it directly and/or indirectly in
connection with its wrongful exploitation and taking of
Airis' contracts with NAP and others, wrongful taking
and usurpation of Airis Corporate Opportunities such as
Swissport, GECAS, CIELOS and Star Alliance, Airis'
publicity rights without the consent of Airis and
plaintiff;

<u>**AS TO THE TWELFTH CLAIM FOR RELIEF:**</u>

44.  For the imposition of a constructive trust;

## AS TO THE THIRTEENTH CLAIM FOR RELIEF:

45.   The immediate Removal of RFactor as a director of Airis,

46. General and special damages and disgorgement of Defendants' profits according to proof at the time of trial together with interest thereon at the legal rate;

**AS TO ALL CAUSES OF ACTION:**

47. For all costs of suit and reasonable attorneys' fees incurred herein by Plaintiffs as may be provided by law;

48. For interest as provided by law; and

49. For such other and further relief as the Court deems to be just and appropriate.

DATED: March 17, 2005        ESCOVAR, AVILA, CHRISTOPHER
                             & RUIZ, LLP


By: _____
        THOMAS P. CHRISTOPHER
        Attorneys for Plaintiff
        BRIAN COCHRAN

103

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: March 17, 2005      ESCOVAR, AVILA, CHRISTOPHER & RUIZ, LLP


By: _____
    THOMAS P. CHRISTOPHER
    Attorneys for Plaintiff
    BRIAN COCHRAN

## VERIFICATION

I, the undersigned, certify and declare that I have read the foregoing **Complaint and Demand for Jury Trial** and know its contents. I am a party to this action. The matters stated in the document described above are true and of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of March 2005, at Pasadena, California.

_____
BRIAN COCHRAN, Plaintiff

105